Greeley *v.* Mansur.

---

HARRIET GREELEY *vs.* RUFUS MANSUR.

*Evidence of juror to affect verdict.*

Upon a motion to set aside a verdict, on account of the sickness of one of the jury rendering it, his testimony cannot be received to show that, through indisposition, he was not able to attend to and understand all the testimony given at the trial.

ON MOTION FOR A NEW TRIAL.

ASSUMPSIT. Upon the tenth day of December, 1872, Mrs.

Greeley held a note for $1,121.30, dated August 27, 1866, paya- ble on demand with interest, to her order, signed by James White, and having indorsed upon it one payment of four hundred dollars, made September 24, 1868. Prior to December 10, 1872, the maker had died ; and on that day, his son, Russell H. White, and Rufus Mansur were at Belfast to settle up the business relating to the decedent's estate. The plaintiff's agent presented this note, having computed the amount at $1,014.50 ; some question arose about it, but the testimony at the trial was conflicting as to what it was ; the plaintiff's agent testifying that Mr. Mansur said the amount should be less ; and that gentleman and Mr. White swearing that they claimed that a smaller sum should be taken as a compromise because the maker's estate had been represented insolvent. The other party admitted that a proposition for a compromise was made, but said Mr. Mansur also denied that the interest was correctly cast.

At all events it resulted in the plaintiff's agent writing a note for the amount of his computation, $1,014.50, dated December 10, 1872, payable to Mrs. Harriet Greeley or bearer in six months after date, with interest at eight per cent, which was signed by Russell H. White, and by Rufus Mansur as surety, though the capacity in which Mr. Mansur signed did not appear upon the note. Mrs. Greeley's agent testified that he told them he did not feel sure that his figures were right, but Mr. Mansur was in a hurry to start for his home in Houlton, and it was then near sundown, and so Mr. Mansur promised if an error were found he would rectify it, and pay any difference ; and thereupon the James White note was surrendered, the words "errors excepted" having been written across it, and the note of Mansur and R. H. White, of the tenor aforesaid, taken in exchange. Messrs. Mansur and White denied that any such conversation was had, or any such promise made by Mr. Mansur. Their note was paid at or after maturity. This action was to recover the alleged error or difference between it and the true amount of the James White note (on the tenth of December, 1872), stated in the declaration to be

$66.77. Writ dated December 8, 1873. The verdict was for the defendant which the plaintiff moved to set aside as against law and evidence; also because, during the trial, "Stephen Tilton, one of the jurors, was disabled by sickness from a proper performance of his duty as a juror." In support of this last ground of the motion, Mr. Tilton's testimony was taken to the effect that he was suffering from severe headache, pain all over him, and sickness at the stomach, all day; that he heard but little of the discussion in the jury-room, took no part in it, and some parts of the testimony of the plaintiff's witness he did not understand, being unable to comprehend it by reason of this sickness.

*J. Williamson* for the plaintiff.

*W. H. McLellan* for the defendant.

WALTON, J. The court is of opinion that the verdict in this case is not against law, nor against evidence, nor manifestly against the weight of evidence. It cannot therefore be set aside on either of these grounds.

Nor can it be set aside on account of the alleged inability of the juror, Tilton, by reason of a severe headache, and other illness, fully to understand the evidence. There is no legal evidence in support of this allegation. The practical inconvenience would be so great, to allow parties, or their counsel, to interrogate jurors as to the grounds of their verdict, or their understanding of the evidence, or the charge of the judge, and then to make a supposed error in any of these particulars the ground of a motion for a new trial, that, upon these subjects, the law has wisely closed the mouths of jurors, by declaring them incompetent to be witnesses to impeach their own verdict. "The modern practice," says Shaw, C. J., "has been uniform, not to entertain a motion to set aside a verdict on the ground of error, mistake, irregularity or misconduct of the jury, or any of them, on the testimony of one or more jurors; that this practice rests on sound considerations of public policy." *Chadbourn* v. *Franklin*, 5 Gray, 312.

It is therefore useless for parties, or their counsel, to interrogate jurors with respect to their verdicts, in the hope thereby to obtain evidence on which to ground a motion for a new trial. Such efforts will not avail.                              *Motion overruled.*

APPLETON, C. J., CUTTING, BARROWS, DANFORTH and PETERS, JJ., concurred.